UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

IN THE MATTER OF THE CLAIMS OF
MICHAEL DAYTON AND BARBARA NIEVES,
INDIVIDUALLY AND BARBARA NIEVES AS
MOTHER AND GUARDIAN FOR HER INFANT
CHILDREN: FELICITY DAYTON, MICHAEL
DAYTON, JR., MAKAYLA DAYTON,
FREDERICK DAYTON AND GRACE DAYTON,

                    Plaintiffs,

    -v-

THE CITY OF MIDDLETOWN, THE CITY OF
MIDDLETOWN POLICE DEPARTMENT
OFFICERS JOHN DOE "1" THROUGH "5",
ORANGE COUNTY AND DEPARTMENT OF
SOCIAL SERVICES ORANGE COUNTY,

                    Defendants.

Case No. 09-CV-8140 (KMK)


OPINION AND ORDER

<u>Appearances</u>:

Stuart R. Shaw, Esq.
Law Offices of Stuart R. Shaw
New York, New York
*Counsel for Plaintiff*

Robert N. Isseks, Esq.
Alex J. Smith, Esq.
Corporation Counsel of the City of Middletown
Middletown, New York
*Counsel for Defendants City of Middletown and City of Middletown Police Department Officers John Doe "1" through "5"*

Laura Wong-Pan, Esq.
Office of the Orange County Attorney
Goshen, New York
*Counsel for Defendant*s *Orange County and Department of Social Services Orange County*

KENNETH M. KARAS, District Judge:

Michael Dayton ("Dayton") and Barbara Nieves ("Nieves"), individually, and Nieves, as guardian for her five children (collectively, "Plaintiffs"), have brought this action against the City of Middletown ("Middletown"), five officers of the City of Middletown Police Department named as John Doe "1" through "5" ("Middletown Officers"), Orange County, and the Department of Social Services Orange County ("DSS") (collectively, "Defendants"), alleging violations of their Fourth, Eighth, and Fourteenth Amendment rights, pursuant to 42 U.S.C. § 1983 ("§ 1983"), as well as various New York state law claims. Orange County, DSS, and Middletown have moved to dismiss. The Middletown Officers have moved for summary judgment. For the reasons that follow, Orange County's and DSS's motion to dismiss is granted; Middletown's motion to dismiss is granted in part; and the Middletown Officers' motion for summary judgment is denied.

## I.  Background

The following allegations are assumed to be true only for the purposes of deciding the instant motions.[1]

### A.  Factual Background

#### 1.  The November 19, 2008 Incident

---

[1] The Court notes that the Amended Complaint – which was not submitted pro se and therefore is not entitled to the less stringent standards and liberal interpretation afforded to pleadings drafted by non-lawyers, *see Cruz v. Gomez*, 202 F.3d 593, 597 (2d Cir. 2000) – is unclear in many instances, and often is confusing. For example, Plaintiffs list thirteen state law causes of action, without specifying what alleged conduct gives rise to each of the claims, which Defendants allegedly committed which torts, or which of the claimed damages is connected to which state law claim. (Am. Compl. ¶ 53.) Nor does the Amended Complaint specify the damages requested from Plaintiffs' federal law claims.

On November 19, 2008, Nieves was driving a car in the City of Middletown, New York, with Dayton and their five children onboard.  (Am. Compl. ¶ 17.)  At approximately 9:30 p.m., Robert Pearson ("Pearson"), a convicted felon wielding a knife, allegedly jumped into the car, stabbed Felicity Dayton under her arm, held a knife to Nieves' throat, and threatened to kill everyone in the vehicle.  (*Id.*)[2]  Dayton "[s]omehow" was able to restrain Pearson, while "simultaneously" Nieves drove to the City of Middletown Police Station.  (*Id.*)  Once Plaintiffs arrived at the police station, Nieves allegedly requested help from nearby police officers and tried to explain to them the events that had just transpired.  (*Id.*)  Police officers then approached the rear of the vehicle and ordered Dayton to release Pearson.  (*Id.*)  Dayton refused, explaining that releasing Pearson might result in Pearson attacking the occupants of the vehicle.  (*Id.*)  However, according to Plaintiffs, the police did not heed Dayton's warning, opting instead to strike Dayton on the head, rendering him unconscious.  (*Id.*)  When the police hit Dayton, he released Pearson, who Plaintiffs claim then attacked Grace Dayton, cutting her head.  (*Id.*)

The police then allegedly pulled Dayton from the vehicle, struck him twice on his back, grabbed him by his genitals, threw him to the ground, handcuffed him, and forced him to lay on the ground for approximately fifteen to twenty-five minutes.  (*Id.* ¶ 18.)  Plaintiffs maintain that during this time, Nieves repeatedly tried to explain to the police that they were unnecessarily restraining Dayton and had "assaulted the wrong man."  (*Id.* ¶ 19.)  Nieves and the children witnessed the entire episode ("the November 19th incident").  (*Id.* ¶¶ 17, 19.)[3]

---

[2] The Amended Complaint is silent as to how Pearson was able to "jump" into Plaintiffs' car or whether Pearson was acquainted with Plaintiffs.

[3] The Amended Complaint does not explain what happened to Pearson.

2.  The Family Court Proceedings

In the days that followed, the police purportedly entered into a conspiracy to cover-up their alleged "negligence" in the November 19th incident.  (*Id.* ¶ 20.)  Specifically, the Middletown police allegedly "aid[ed] the propagation and/or prosecution of false charges against" Nieves and Dayton by DSS, "whereby the infant children were removed from their lawful custody on 'trumped up' family court proceedings" that were "a ruse."  (*Id.*)  These charges resulted in the temporary placement of the five Dayton children in foster care on November 21, 2005, with the signed consent of Nieves.  (Decl. of Laura Wong-Pan ("Wong-Pan Decl.") Ex. C.)[4]  On November 25, 2008, DSS filed a Petition of Child Neglect (the "Petition") against Dayton and Nieves in Family Court of New York, County of Orange ("Family Court").  (*Id.* Ex. B.)[5]  Subsequently, at a proceeding on December 15, 2008, the Family Court entered a Temporary Order of Protection ordering Dayton to stay away from the five children and their

----

[4] The signed consent states that Nieves "understand[s] that this placement is pursuant to Section 1021 of the Family Court Act and [she] ha[s] been informed that in the event that [she] do[es] not consent to the placement of [her] children, Children's Protective Services Unit will apply to the Orange County Family Court for a temporary removal order pursuant to Section 1022 of the Family Court Act."  (Wong-Pan Decl. Ex. C.)

[5] According to the Petition, "[u]pon information and belief, a report was received at the New York State Office of Child Abuse and Maltreatment alleging" that on November 19, 2008, Nieves and Dayton took their five children, "ages two to ten years[,] with them to purchase/sell prescription drugs," and that Pearson entered the vehicle "[d]uring the transaction."  (Wong-Pan Decl. Ex. B ¶ 4.)  Additionally, the Petition alleges that "[b]oth parents have had extensive involvement" with DSS; that Nieves "has had prior family court involvement for four older children who were removed and her parental rights were eventually terminated"; that prior reports of "neglect issues involving Felicity Dayton" had been indicated; and that earlier in 2008, "both anonymous sources and school staff reported concerns regarding care of the children."  (*Id.*)  As discussed *infra* Section II.A.1, the Court may take judicial notice of the Petition, even though it was not attached to Plaintiffs' Amended Complaint, as a document filed in another court proceeding, *see Munno v. Town of Orangetown*, 391 F. Supp. 2d 263, 268 (S.D.N.Y. 2005), but does not do so for the truth of the allegations contained in the Petition, *see Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991).

4

home.  (*Id.* Ex. D.)  At this proceeding, Dayton and Nieves, who were present and each

represented by separate counsel, both stated under oath that they consented to the finding of

neglect based on inadequate guardianship, and testified that nobody had threatened them or

promised them anything in order to obtain their consent to the neglect finding.  (*Id.* Ex. E, at 4-

10.)  Dayton also stated under oath that he understood the provisions of the Temporary Order of

Protection, which prevented him from having any contact with the children except for visitation

supervised by DSS.  (*Id.* Ex. E, at 11.)  However, according to Plaintiffs, DSS and/or Orange

County "forced" Dayton to submit to this protective order preventing him from living with his

children or visiting with them unsupervised, and "coerced" and "strong-armed" Nieves to

consent to the finding of neglect in order to regain custody of her children.  (Am. Compl. ¶ 21.)

At the December 15, 2008 proceeding, a dispositional hearing was scheduled for March 3, 2009,

and the Dayton children were returned to the care of Nieves.  (Wong-Pan Decl. Ex. E, at 3, 18.)

On January 27, 2009, the Family Court entered a Determination of Fact-Finding based on the

December 15, 2008 proceeding, again stating that Dayton and Nieves had each appeared with

counsel and "voluntarily, intelligently and knowingly consented to the entry of an order of fact-

finding," and issuing the findings of neglect and orders of supervision and protection discussed

at the December 15, 2008 proceeding.  (*Id.* Ex. F.)  At the March 3, 2009 proceeding, the Family

Court judge extended the Order of Protection until March 3, 2010.  (*Id.* Ex. G.)  The Order of

Protection indicates that Dayton and Nieves again were each represented by attorneys, and

"consented to the issuance of this order of protection.  (*Id.*)

        According to Plaintiffs, DSS and/or Orange County "did the aforementioned acts" to

keep Dayton under the threat of family and/or criminal charges, "with the hope that [Dayton]

could not defend himself on the family/criminal case and either plead to a lesser charge and/or

not sue" them and the Middletown Officers.  (Am. Compl. ¶ 30.)  Moreover, as a part of the alleged conspiracy, Defendants purportedly "did everything possible to prevent" Dayton from being "released from [the] false family court charges, despite possessing . . . evidence that he was innocent" (*id.* ¶ 29), and withheld information that would have exonerated Dayton in the Family Court proceedings, (*id.* ¶ 33).

Plaintiffs claim that the beating allegedly suffered by Dayton during the November 19th incident resulted in "permanent injures" to Dayton and exacerbated injuries he had previously sustained in a motor vehicle accident, rendering it impossible for him to work or do household chores.  (*Id.* ¶ 22.)  In addition, Plaintiffs assert that Dayton, Nieves, and their five children all have experienced emotional distress as a result of Defendants' actions.  (*Id.* ¶¶ 22, 24, 33-34.)

B.  Procedural Background

On January 30, 2009, Plaintiffs served a notice of claim (the "1/1/09 Notice of Claim") on Middletown and the Middletown Officers indicating that Dayton would be asserting federal and state law claims against them.  (Decl. of Robert N. Isseks ("Isseks Decl.") Ex. A.)  On May 30, 2009, Plaintiffs served an amended notice of claim ("the 5/30/09 Amended Notice of Claim") on Middletown, the Middletown Officers, Orange County, and DSS, adding Nieves and the five Dayton children as claimants, and indicating that Plaintiffs would also be suing Orange County and DSS.  (Wong-Pan Decl. Ex. A.)  Plaintiffs commenced the instant action by filing their Complaint on September 23, 2009.  (Dkt. No. 1.)  On March 2, 2010, Plaintiffs filed an Amended Complaint.  (Dkt. No. 8.)

On July 28, 2010, Orange County and DSS moved to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).  (Dkt. No. 14.)  On July 30, 2010, Middletown and the Middletown

6

Officers also moved to dismiss pursuant to Rule 12(b)(6), and in the alternative, moved for summary judgment pursuant to Federal Rule of Civil Procedure 56. (Dkt. No. 18.)

## II. Discussion

### A. Standard of Review

#### 1. Rule 12(b)(6)

"On a Rule 12(b)(6) motion to dismiss a complaint, the court must accept a plaintiff's factual allegations as true and draw all reasonable inferences in [the plaintiff's] favor." *Gonzalez v. Caballero*, 572 F. Supp. 2d 463, 466 (S.D.N.Y. 2008); *see also Ruotolo v. City of New York*, 514 F.3d 184, 188 (2d Cir. 2008) ("We review *de novo* a district court's dismissal of a complaint pursuant to Rule 12(b)(6), accepting all factual allegations in the complaint and drawing all reasonable inferences in the plaintiff's favor." (internal quotation marks omitted)).

The Supreme Court has held that "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (second alteration in *Twombly*) (citations omitted). Instead, the Supreme Court has emphasized that "[f]actual allegations must be enough to raise a right to relief above the speculative level," *id.*, and that "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563. A plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. If a plaintiff "ha[s] not nudged [his] claims across the line from conceivable to plausible, [his] complaint must be dismissed." *Id.*; *see also Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009) ("Determining whether a complaint states a plausible claim for relief will . . . be a

7

context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged — but it has not 'shown' — 'that the pleader is entitled to relief.'" (alteration and citation omitted) (quoting Fed. R. Civ. P. 8(a)(2))).

Generally, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (internal quotation marks omitted); *see also Staehr v. Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406, 424-25 (2d Cir. 2008) (holding that district court properly took judicial notice of and considered media reports, state court complaints, and regulatory filings on a motion to dismiss); *Munno v. Town of Orangetown*, 391 F. Supp. 2d 263, 268 (S.D.N.Y. 2005) ("The court may also consider matters of which judicial notice may be taken, even if the corresponding documents are not attached to or incorporated by reference in the complaint," including "public records."). In the motion to dismiss context, however, the court should generally take judicial notice "to determine what statements [the documents] contain[] . . . not for the truth of the matters asserted." *Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991); *see also Nealy v. Berger*, 08-CV-1322, 2009 WL 704804, at *2 n.3 (E.D.N.Y. Mar. 16, 2009) (noting that courts may take judicial notice of documents and filings in other courts, "not for the truth of the matters asserted therein but to establish the fact of such filings or orders").

Here, Defendants Orange County and DSS submitted documents from the Family Court proceedings. (Wong-Pan Decl. Exs. B-G.) The Court may take judicial notice of these documents, and has considered them in deciding the instant motion to dismiss, as cited above.

*See Lomnicki v. Cardinal McCloskey Servs.*, No. 04-CV-4548, 2007 WL 2176059, at *1 n.1 (S.D.N.Y. July 26, 2007) (concluding that courts make take judicial notice of family court orders and determinations).

### 2.  Rule 56

Summary judgment may be granted when it is shown that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986) (same).  "When ruling on a summary judgment motion, the district court must construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant."  *Dall. Aerospace, Inc. v. CIS Air Corp.*, 352 F.3d 775, 780 (2d Cir. 2003). A party seeking summary judgment bears the burden of establishing that no genuine issue of material fact exists.  *See Atl. Mut. Ins. Co. v. CSX Lines, L.L.C.*, 432 F.3d 428, 433 (2d Cir. 2005).  "However, before a Court grants summary judgment, the non-movant 'must have had the opportunity to discover information that is essential to his opposition to the motion for summary judgment.'"  *Fowler v. Scores Holding Co.*, 677 F. Supp. 2d 673, 677 n.1 (S.D.N.Y. 2009) (quoting *Hellstrom v. U.S. Dep't of Veteran Affairs*, 201 F.3d 94, 97 (2d Cir. 2000)).  Therefore, "[o]nly in the rarest of cases may summary judgment be granted against a plaintiff who has not been afforded the opportunity to conduct discovery."  *Hellstrom*, 201 F.3d at 97.

### B.  *Rooker-Feldman*

Defendants argue that the *Rooker-Feldman* doctrine prohibits Plaintiffs from seeking relief for injuries related to the proceedings in Family Court.  (Mem. of Law ("Orange Mem.") 9-11; Mem. of Law Pursuant to F.R.C.P. Rules 12 and 16 in Supp. of Defs.' Mot. to Dismiss the

Am. Verified Compl. ("Middletown Mem.") 16.)[6]  "Under the *Rooker-Feldman* doctrine, federal

district courts lack jurisdiction over suits that are, in substance, appeals from state-court

judgments." *Phillips ex rel. Green v. City of New York*, 453 F. Supp. 2d 690, 712 (S.D.N.Y.

2006) (internal quotation marks omitted); *see generally Dist. of Columbia Court of Appeals v.

Feldman*, 460 U.S. 462, 482-86 (1983); *Rooker v. Fid. Trust Co.*, 263 U.S. 413, 415-16 (1923).

This is because Congress's grant of federal jurisdiction to review final state court judgments

pursuant to 28 U.S.C. § 1257 "as long interpreted, vests authority to review a state court's

judgment solely" in the hands of the United States Supreme Court.  *Exxon Mobil Corp. v. Saudi

Basic Indus. Corp.*, 544 U.S. 280, 292 (2005); *see also Spickerman v. Carr*, No. 04-CV-6226,

2006 WL 140714, at *6 (W.D.N.Y. Jan. 17, 2006) ("Essentially, the *Rooker-Feldman* doctrine

bars collateral attack on a state court judgment which attempts to cloak the attack as a § 1983

action in federal court.").  In *Exxon Mobil*, the Supreme Court emphasized that the doctrine is

"narrow" and only applies to federal lawsuits brought by "state-court losers complaining of

---

[6] The Court notes that although Defendants raised their *Rooker-Feldman* arguments in the context of their Rule 12(b)(6) motions to dismiss, motions under *Rooker-Feldman* are actually challenges to the court's subject matter jurisdiction, and are properly brought pursuant to Rule 12(b)(1).  That said, like with Rule 12(b)(6), under Rule 12(b)(1), "the court must accept all factual allegations in the complaint as true and draw inferences from those allegations in the light most favorable to the plaintiff."  *Jaghory v. N.Y. State Dep't of Educ.*, 131 F.3d 326, 329 (2d Cir. 1997).  Although courts are generally limited to examining the sufficiency of the pleadings when considering a motion to dismiss, where a party challenges the court's subject matter jurisdiction, "the court may resolve disputed jurisdictional fact issues by reference to evidence outside the pleadings."  *Flores v. S. Peru Copper Corp.*, 414 F.3d 233, 255 n.30 (2d Cir. 2003) (internal quotation marks omitted).  The party asserting jurisdiction, in this case Plaintiffs, has the burden of showing by a preponderance of the evidence that the Court has jurisdiction.  *See APWU v. Potter*, 343 F.3d 619, 623 (2d Cir. 2003).

In addition, when a defendant moves to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction, and also moves to dismiss on other grounds such as Rule 12(b)(6) for failure to state a claim upon which relief can be granted, the Court must consider the Rule 12(b)(1) motion first.  *See Rhulen Agency, Inc. v. Ala. Ins. Guar. Ass'n*, 896 F.2d 674, 678 (2d Cir. 1990); *Adamu v. Pfizer, Inc.*, 399 F. Supp. 2d 495, 500 (S.D.N.Y. 2005).

injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil*, 544 U.S. at 284; *see also Green v. Mattingly*, 585 F.3d 97, 101 (2d Cir. 2009) (noting that *Exxon Mobil* narrowed the Second Circuit's previously "expansive[]" interpretation of the *Rooker-Feldman* doctrine).

> After *Exxon Mobil*, the Second Circuit reexamined *Rooker-Feldman* and laid out
>
> four 'requirements' that must be met before the *Rooker-Feldman* doctrine applies: First, the federal-court plaintiff must have lost in state court. Second, the plaintiff must 'complain of injuries caused by a state-court judgment.' Third, the plaintiff must 'invite district court review and rejection of that judgment.' Fourth, the state-court judgment must have been 'rendered before the district court proceedings commenced'–i.e., *Rooker-Feldman* has no application to federal-court suits proceeding in parallel with ongoing state-court litigation.

*Green*, 585 F.3d at 101 (alterations omitted) (quoting *Hoblock v. Albany Cnty. Bd. of Elections*, 422 F.3d 77, 85 (2d Cir. 2005)); *see also Phillips*, 453 F. Supp. 2d at 713 (noting that prior to *Exxon Mobil*, the Second Circuit "had incorrectly interpreted *Rooker-Feldman* to encompass and even supersede ordinary preclusion principles"). In addition, the Second Circuit has explained that "a federal plaintiff cannot escape the *Rooker-Feldman* bar simply by relying on a legal theory not raised in state court." *Holblock*, 422 F.3d at 87. In other words, the simple assertion of a constitutional claim does not create an independent injury if the plaintiff's injury is caused by the state court judgment. *See id.* (noting that if a state court terminated a parent's rights, the parent could not avoid *Rooker-Feldman* by asserting in federal court that the decision violated his due process rights).

Here, Plaintiffs assert that they are not challenging the validity of the state court decision; instead, they claim that they "are only challenging the egregious coercive tactics and pressure exerted upon Plaintiffs to enter into a guilty plea to the charges alleged against them in the

Orange County Family Court."  (Reply Affirm. in Opp'n to Mot. to Dismiss by City of Middletown and County of Orange ("Pls.' Opp'n") ¶ 49.)  However, some of the injuries alleged by Plaintiffs in the Amended Complaint clearly arise not just from actions taken prior to the Family Court proceedings, but from the Family Court judgment itself.  This Court may not adjudicate those alleged injuries, because the *Rooker-Feldman* requirements are all met.  First, Plaintiffs lost in state court on January 27, 2009, when the Family Court entered its finding of neglect, and on March 3, 2009, when the Family Court entered the finalized order of protection extending the December 15, 2008 temporary order of protection.  (Wong-Pan Decl. Exs. F, G.) Second, Plaintiffs have alleged some injuries that clearly are caused by the state court judgment. These include Plaintiffs' allegations: that Dayton and Nieves "now have a record of charges in Family Court" (Am Compl. ¶ 24); that Dayton "is prevented from enjoying the companionship of his family" (*id.* ¶ 31); that the "Family Court charges were void on its [sic] face at inception and/or became void when the evidence was obtained by defendants, exonerating . . . Dayton" (*id.* ¶ 32); and that DSS has made Dayton and Nieves comply with the court order preventing Dayton "from living in the same household, visiting his children, and or seeing [] Nieves," (*id.* ¶ 36). Third, by asserting claims arising from these injuries, Plaintiffs are necessarily inviting the Court to review and reject the state court's finding that Dayton and Nieves had neglected their children, and that an order of protection against Dayton was warranted.  Fourth, these final judgments were rendered by the Family Court well before Plaintiffs initiated the present action on September 23, 2009.  Thus, the Court may not consider these claims, and accordingly, any such claims are dismissed. *See Lomnicki*, 2007 WL 2176059, at *2, *4-6 (concluding that, where the plaintiff claimed that her children were removed in violation of her due process rights and based on unproven allegations of neglect, *Rooker-Feldman* barred the plaintiff's claims for

12

damages stemming from the children's removal, which was done pursuant to a family court order finding that the plaintiff had neglected them).

The Court again notes that it is extremely difficult to ascertain exactly which claims Plaintiffs are asserting against which Defendants, and based on which alleged conduct. However, certain of Plaintiffs' claims relating to the Family Court proceedings do survive *Rooker-Feldman*.[7]  For example, Plaintiffs allege that the police aided the "prosecution" of Nieves and Dayton in Family Court, causing the children to be removed from their custody after the November 19th incident until the initial Family Court proceedings.  (Am. Compl. ¶ 20.) Although the Amended Complaint does not make this evident, it appears that the children were removed from their home and from the custody of Nieves from November 21, 2005, until December 15, 2008.  (Wong-Pan Decl. Exs. C, E.)  As this was not done pursuant to a final court judgment (or, in fact, any court order), any claims arising from the removal of the children during that time period are not barred by *Rooker-Feldman*.  *Cf. Green*, 585 F.3d at 102-03 (holding that a plaintiff's claim for injuries from a temporary restraining order removing her child from her home was not barred by *Rooker-Feldman* because the plaintiff was not a "state court loser," where the claim was based on an "interlocutory, unappealable" order that had subsequently been reversed, but noting that *Rooker-Feldman* would have applied if the plaintiff had instead appealed "a final order of disposition permanently removing plaintiff's child" from

---

[7] The Court notes that although Orange County argues that "the *Rooker-Feldman* doctrine bars the instant action" (Orange Mem. 10), and Middletown adopts the arguments made by Orange County and states that the Court "lacks subject matter jurisdiction under the *Rooker-Feldman* Doctrine" (Middletown Mem. 16), *Rooker-Feldman* clearly has no applicability to Plaintiffs' claims arising directly from the November 19th incident and arrest of Dayton – as opposed to their claims arising from the subsequent Family Court proceedings and orders – because the November 19th events did not lead to any state court judgment apart from the Family Court finding of neglect and order of protection.

her custody).  However, Plaintiffs must specify what particular injury and cause of action arose from that event.

Additionally, Plaintiffs maintain that they are challenging the alleged "coerc[ion]" that forced them to submit to the finding of neglect and the order of protection.  (Am. Compl. ¶ 21.) As this conduct by DSS purportedly occurred prior to the entering of the final judgments in Family Court, any resulting injury cannot be said to have been "caused by a state court judgment."  However, the Amended Complaint gives scant indication of what the precise alleged injuries are from this supposed coercion.  The injuries cannot be that the order of protection was issued against Dayton, or that the finding of neglect was entered against Nieves and Dayton, because, as already explained, those claims are barred by *Rooker-Feldman*.  If Plaintiffs are alleging that the supposed coercion in and of itself (before the issuance of the final judgments) caused a procedural due process injury, they may amend their pleadings to specify, in accordance with the requirements of *Twombly* and Rule 8(a): what liberty or property interest was violated; what process they believe was denied; by which defendant; and based on which specific actions.  Such amendment would allow Defendants to know what they are being accused of, and to be able to properly respond accordingly.[8]

---

[8] However, when amending their pleadings, Plaintiffs should be mindful that these alleged injuries from the "coercive tactics" may well have serious collateral estoppel issues.  The Family Court found that both Nieves and Dayton freely consented to the finding of neglect entered against them and to the order of protection issued against Dayton, at multiple proceedings where both Dayton and Nieves were represented by counsel and allocuted under oath to the facts substantiating the findings and charges that they now assert are false.  (Wong-Pan Decl. Exs. E-G.)  As discussed, under *Rooker-Feldman*, Plaintiffs cannot argue that the Family Court's judgments were wrong, or challenge the Family Court's conclusion that their consent was not coerced.  And, to the extent that there are other possible claims that may not precisely fit the *Rooker-Feldman* requirement of complaining of an injury caused by the judgment, these claims may still be subject to ordinary preclusion principles, which Plaintiffs should consider before filing their Second Amended Complaint.  *See Swiatkowski v. Citibank*, No. 10-CV-114, 2010 WL 3951212, at *12 (E.D.N.Y. Oct. 7, 2010) ("Even assuming that

C.  Claims Against DSS

DSS moves to dismiss the entire Amended Complaint against it on the grounds that as a department of Orange County, it is not a suable entity.  (Orange Mem. 6.)  Indeed, several cases have held that municipal departments cannot be sued under New York law.  *See Hall v. City of White Plains*, 185 F. Supp. 2d 293, 303 (S.D.N.Y. 2002) ("Under New York law, departments which are merely administrative arms of a municipality, do not have a legal identity separate and apart from the municipality and cannot sue or be sued."); *Hoisington v. Cnty. of Sullivan*, 55 F. Supp. 2d 212, 214 (S.D.N.Y. 1999) ("[M]unicipal departments like the Department of Social Services are not amenable to suit, and no claims lie directly against the Department." (citations omitted)); *Baker v. Willett*, 42 F. Supp. 2d 192, 198 (N.D.N.Y. 1999) ("A police department cannot sue or be sued because it does not exist separate and apart from the municipality and does not have its own legal identity.").

Accordingly, where both the municipality and the municipal department have been named as defendants, courts routinely have dismissed the claims against the department.  *See, e.g.*, *Hall*, 185 F. Supp. 2d at 303 ("Because plaintiff has named the City of White Plains as a

---

*Rooker-Feldman* did not bar plaintiff's claims, and to the extent plaintiff argues that she is raising claims specific to defendants' conduct in Bankruptcy Court only, the Court still concludes that it should grant defendants' motion to dismiss because all of plaintiff's federal claims are barred by ordinary preclusion principles."); *Caldwell v. Gutman, Mintz, Baker & Sonnenfeldt, P.C.*, 701 F. Supp. 2d 340, 349 (E.D.N.Y. 2010) ("However, even if *Rooker-Feldman* did not bar any of plaintiffs' claims, the [c]ourt would still conclude that defendants are entitled to judgment on the pleadings because plaintiffs' claims are barred by ordinary preclusion principles.").  As the Second Circuit has explained, "collateral estoppel means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." *Leather v. Eyck*, 180 F.3d 420, 424 (2d Cir. 1999) (alterations and internal quotation marks omitted).

defendant, any claims against the [White Plains Department of Public Safety ('WPDPS')] are redundant.  WPDPS does not have its own legal identity, and therefore the claims against it are dismissed."); *Manning v. Cnty. of Westchester*, No. 93-CV-3366, 1995 WL 12579, at *2 (S.D.N.Y. Jan. 5, 1995) (removing the Westchester County Police Department as a named defendant where the County of Westchester, as the real party in interest, was already a named defendant).  Courts also have substituted the municipality where only the department had originally been named.  *See, e.g.*, *Jones v. Westchester Cnty. Dep't of Corr. Med. Dep't*, 557 F. Supp. 2d 408, 416 n.4 (S.D.N.Y. 2008) ("The Department of Corrections Medical Department is a County agency, so the proper party Defendant is Westchester County."); *Butler v. Westchester Cnty.*, No. 94-CV-8216, 2000 WL 335539, at *1 n.2 (S.D.N.Y. Mar. 30, 2000) ("For purpose[s] of this motion, the County of Westchester will be considered as the real party in interest without making a determination whether D.O.C. is a suable entity.").  *But see Linden v. Westchester Cnty.*, No. 93-CV-8373, 1995 WL 686742, at *1-2 (S.D.N.Y. Nov. 20, 1995) (concluding that the Westchester County Department of Corrections should remain a party to the action, given that defendants had offered no support for their contention that it was not a suable entity, the Department had previously appeared as a defendant in several § 1983 actions, and the municipal defendants were entitled to judgment on the merits).

Plaintiffs point to *Gottlieb v. County of Orange*, 84 F.3d 511 (2d Cir. 1996), to support their contention that DSS is a suable entity.  *Gottlieb* is no help to Plaintiffs here, however, because the question of whether the municipal department could be sued was never addressed by the Second Circuit, and, in fact, the district court made no distinction between Orange County and DSS.  *See Gottlieb v. Cnty. of Orange*, 882 F. Supp. 71, 71 n.1 (S.D.N.Y. 1995) ("The term 'County' as used here refers to both the County of Orange and the Orange County Department of

Social Services.").  Accordingly, the Court concludes that the weight of authority supports the view that DSS is not a suable entity, and in light of the fact that Plaintiff will not be prejudiced by the removal of DSS as a named defendant – because Orange County already is named and would be responsible for any resulting judgment – all of the claims against DSS are dismissed.

D. § 1983 Claims Against Orange County and Middletown

Orange County and Middletown (collectively, "Municipal Defendants") argue that Plaintiffs have failed to set forth sufficient allegations to state a federal claim against them. (Orange Mem. 6; Middletown Mem. 14.)  "Congress did not intend municipalities to be held liable [under § 1983] unless action pursuant to official municipal policy of some nature caused a constitutional tort." *Monell v. Dep't of Soc. Servs. of N.Y.C.*, 436 U.S. 658, 691 (1978).  Thus, "to prevail on a claim against a municipality under section 1983 based on acts of a public official, a plaintiff is required to prove: (1) actions taken under color of law; (2) deprivation of a constitutional or statutory right; (3) causation; (4) damages; and (5) that an official policy of the municipality caused the constitutional injury." *Roe v. City of Waterbury*, 542 F.3d 31, 36 (2d Cir. 2008), *cert. denied*, 130 S. Ct. 95 (2009).  The fifth element reflects the notion that "a municipality may not be held liable under § 1983 solely because it employs a tortfeasor." *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 403 (1997); *see also Newton v. City of New York*, 566 F. Supp. 2d 256, 270 (S.D.N.Y. 2008) ("As subsequently reaffirmed and explained by the Supreme Court, municipalities may only be held liable when the municipality itself deprives an individual of a constitutional right.").  In other words, a municipality may not be liable under § 1983 "by application of the doctrine of *respondeat superior*." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 478 (1986) (emphasis in original); *see also Vassallo v. Lando*, 591 F. Supp. 2d 172, 201 (E.D.N.Y. 2008) (noting that "a municipal entity may only be held liable where the entity *itself*

17

commits a wrong" (emphasis in original)).  Instead, there must be a "direct causal link between a municipal policy or custom and the alleged constitutional deprivation."  *City of Canton v. Harris*, 489 U.S. 378, 385 (1989); *see also City of St. Louis v. Praprotnik*, 485 U.S. 112, 122 (1988) ("[G]overnmental bodies can act only through natural persons . . . [and] governments should be held responsible when, and only when, their official policies cause their employees to violate another person's constitutional rights.").  Moreover, "a custom or policy cannot be shown by pointing to a single instance of unconstitutional conduct by a mere employee of the [government]."  *Newton*, 566 F. Supp. 2d at 271; *see also City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823-24 (1985) ("Proof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell*, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker."); *Brogdon v. City of New Rochelle*, 200 F. Supp. 2d 411, 427 (S.D.N.Y. 2002) ("A single incident by itself is generally insufficient to establish the affirmative link between the municipal policy or custom and the alleged unconstitutional violation.").  In the end, therefore, "a plaintiff must demonstrate that, through its deliberate conduct, the municipality was the 'moving force' behind the alleged injury."  *Roe*, 542 F.3d at 37 (quoting *Brown*, 520 U.S. at 404).

"In determining municipal liability, it is necessary to conduct a separate inquiry into whether there exists a 'policy' or 'custom.'"  *Davis v. City of New York*, 228 F. Supp. 2d 327, 336 (S.D.N.Y. 2002), *aff'd*, 75 F. App'x 827 (2d Cir. 2003).  "The Supreme Court has identified at least two situations that constitute a municipal policy:  (1) where there is an officially promulgated policy as that term is generally understood (*i.e.*, a formal act by the municipality's governing body), and (2) where a single act is taken by a municipal employee who, as a matter

of State law, has final policymaking authority in the area in which the action was taken."
*Newton*, 566 F. Supp. 2d at 271 (footnotes omitted) (citing *Monell*, 436 U.S. at 690, and
*Pembaur*, 475 U.S. at 480-81).  "A municipal 'custom,' on the other hand, need not receive
formal approval by the appropriate decisionmaker . . . ."  *Id.*  Instead, "an act performed pursuant
to a 'custom' that has not been formally approved by an appropriate decisionmaker may fairly
subject a municipality to liability on the theory that the relevant practice is so widespread as to
have the force of law."  *Brown*, 520 U.S. at 404; *see also Kern v. City of Rochester*, 93 F.3d 38,
44 (2d Cir. 1996) (noting that a municipality's custom "need not be memorialized in a specific
rule or regulation").  To prevail on this theory of municipal liability, however, a plaintiff must
prove that the custom at issue is well-settled.  *See Praprotnik*, 485 U.S. at 127 (noting that the
Supreme Court "has long recognized that a plaintiff may be able to prove the existence of a
widespread practice that, although not authorized by written law or express municipal policy, is
'so permanent and well settled as to constitute a custom or usage with the force of law'" (quoting
*Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 167-68 (1970)) (internal quotation marks omitted)).

Plaintiffs' primary *Monell* claim is that the Municipal Defendants failed to adequately
train police officers, prosecutors, and social services workers.  "In *City of Canton, Ohio v.
Harris*, the Supreme Court established that a municipality can be liable for failing to train its
employees where it acts with deliberate indifference in disregarding the risk that its employees
will unconstitutionally apply its policies without more training."  *Amnesty Am. v. Town of W.
Hartford,* 361 F.3d 113, 129 (2d Cir. 2004) (citing *City of Canton*, 489 U.S. at 387-90).
Importantly, "*Monell* does not provide a separate cause of action for the failure by the
government to train its employees; it *extends* liability to a municipal organization where that
organization's failure to train, or the policies or customs that it has sanctioned, led to an

19

independent constitutional violation." *Segal v. City of New York*, 459 F.3d 207, 219 (2d Cir. 2006) (emphasis in original).

To demonstrate deliberate indifference, a plaintiff must establish three facts: (i) that a policymaker knows to a "moral certainty" that the municipality's employees will confront a certain situation; (ii) either that the situation presents the municipal employee with a difficult choice of the type that training or supervision will make less difficult, or that there is a history of municipal employees improperly handling the situation; and (iii) that the wrong choice by the municipal employee will often cause the deprivation of an individual's constitutional rights. *See Walker v. City of New York*, 974 F.2d 293, 297-98 (2d Cir. 1992). In addition to deliberate indifference, a plaintiff ultimately must identify "a specific deficiency in the city's training program and establish that that deficiency is 'closely related to the ultimate injury,' such that it 'actually caused' the constitutional deprivation." *Amnesty Am.*, 361 F.3d at 129 (quoting *City of Canton*, 489 U.S. at 391). In other words, a plaintiff must demonstrate that the municipal employee's "'shortcomings . . . resulted from . . . a faulty training program' rather than from the negligent administration of a sound program or other unrelated circumstances." *Id.* at 129-30 (quoting *City of Canton*, 489 U.S. at 390-91). "The elements of an identified training deficiency and a close causal relationship, which together require the plaintiff[] to prove that the deprivation occurred as the result of a municipal policy rather than as a result of isolated misconduct by a single actor, ensure that a failure to train does not collapse into respondeat superior liability." *Id.* at 130 (emphasis omitted).

However, Plaintiffs "need not show that the municipality had an explicitly stated rule or regulation[;] [i]nstead, an inference that such a policy existed can be drawn from [P]laintiff[s'] proffer of circumstantial evidence." *See Babi-Ali v. City of New York*, 979 F. Supp. 268, 273

20

(S.D.N.Y. 1997) (citation and internal quotation marks omitted).  For example, "'deliberate indifference' can be shown by proof that a defendant received 'repeated complaints of civil rights violations' where those complaints were not investigated or where that defendant made 'no meaningful attempt . . . to forestall further incidents.'"  *Ricketts v. Port Auth. of N.Y. & N.J.*, No. 06-CV-3820, 2009 WL 857399, at *3 (S.D.N.Y. Mar. 30, 2009) (quoting *Vann v. City of New York*, 72 F.3d 1040, 1049 (2d Cir. 1995)); *see also Sarus v. Rotundo*, 831 F.2d 398, 401 (2d Cir. 1987) (concluding that a plaintiff's allegation of "municipal inaction such as the persistent failure to discipline subordinates who violate civil rights could give rise to an inference of an unlawful municipal policy of ratification of unconstitutional conduct within the meaning of *Monell*"); *Colon v. City of New York*, No. 09-CV-8, 2009 WL 4263362, at *1-2 (E.D.N.Y. Nov. 25, 2009) (denying motion to dismiss *Monell* claim where plaintiff offered (1) other civil rights lawsuits alleging similar violations against municipality and (2) a statement from a Deputy Commissioner to support inference of municipal policy).

Here, Plaintiffs offer two facts in support of their argument that the Municipal Defendants have acquiesced to a policy of failing to train municipal employees.  First, Plaintiffs claim that the Municipal Defendants "look the other way" and do "not take any constructive action either by education or setting forth policy or doing training to address the numerous complaints of police brutality and injustice to parents . . . ."  (Pls.' Opp'n ¶ 25.)  Second, Plaintiffs assert that evidence of the Municipal Defendants' failure to train is found in "the plethora of cases filed against them and their employees" alleging constitutional violations.  (*Id.*; *id.* Ex. A.)  Plaintiffs also submitted an affidavit from Nieves with their papers opposing the instant motions.  (*See* Reply Aff. in Opp'n to Mot. to Dismiss by City of Middletown and County of Orange ("Nieves Affidavit").)  In this affidavit, Nieves alleges that once DSS "open[s]

21

a case against a parent for things of this nature," it "operates" in a certain way.  (*Id.* ¶ 19.)

According to Nieves, each time she has been in the system, DSS requires her to plead guilty to

the charges brought against her, or her children will remain in foster care while she "fight[s] the

charges through the drawn-out court process."  (*Id.* ¶ 21.)  Nieves further states that DSS

"consistently brings erroneous petitions against parents, and then forces the parent to plead to

charges in exchange for returning the children" (*id.* ¶ 25), and "fails to properly investigate each

case before removing the children from the home, (*id.* ¶ 26).

 However, none of these assertions appears in the Amended Complaint.  On a motion to

dismiss, the Court may only consider facts alleged in the complaint and documents attached or

referenced in the pleadings.  *See Leonard F.*, 199 F.3d at 107; Fed. R. Civ. P. 12(d).  "Motions,

declarations and affidavits are not pleadings."  *Granger v. Gill Abstract Corp.*, 566 F. Supp. 2d

323, 335 (S.D.N.Y. 2008) (citing Fed R. Civ. P. 7(a)).  Thus, the Court cannot consider the facts

alleged in Plaintiffs' Opposition papers or the Nieves Affidavit in deciding the instant motions.[9]

 The factual allegations in the Amended Complaint regarding *Monell* liability are too

conclusory to survive a motion to dismiss.  For example, the Amended Complaint states that the

City of Middletown has, on information and belief, "negligently failed to properly administer its

agencies[,] departments[,] personnel[,] and the like in regard to the maintenance, design,

supervision and control over those accused and detained . . . ."  (Am. Compl. ¶ 25; *see also id.*

---

[9] It is far from clear that the result would be different even if the Court were to consider the facts cited in Plaintiffs' Opposition.  Some of the examples of alleged Middletown police misconduct post-date the claims here.  In addition, Orange County was named as a defendant in only one of the cases cited by Plaintiffs, and, although Orange County was named in the caption of that case, the complaint contained no allegations regarding it, and the plaintiff voluntarily dismissed Orange County from the case.  *See Jackson v. Middletown Police Dep't*, No. 09-CV-6316 (S.D.N.Y. party dismissed Feb. 22, 2010).  However, the Court will allow Plaintiffs an opportunity to incorporate these claims (and any others) in a Second Amended Complaint.

¶¶ 26, 42-44.)  This boilerplate recitation of the elements of a *Monell* claim is insufficient to survive a motion to dismiss.  *See Claudio v. City of New York*, 423 F. Supp. 2d 170, 172 (S.D.N.Y. 2006); *see also Abreu v. City of New York*, 657 F. Supp. 2d 357, 360-61 (E.D.N.Y. 2009) ("[The plaintiff's] complaint succinctly states one of the core legal concepts animating *Monell* liability.  But it does absolutely nothing else.").  Consequently, Plaintiffs' federal claims must be dismissed as to Middletown and Orange County, because Plaintiffs have failed to adequately plead the existence of a policy or custom by either municipality.

Plaintiffs rely heavily on the *Gottlieb* case to support the argument that their *Monell* claims should survive these motions to dismiss.  In *Gottlieb*, the district court denied the defendants' motion to dismiss the *Monell* claims, concluding that more discovery was appropriate to determine whether the municipality had adopted an unconstitutional policy.  *See Gottlieb*, 84 F.3d at 516.  Plaintiffs appear to assert that *Gottlieb* thus entitles all *Monell* plaintiffs to discovery to determine whether the municipality has adopted an unlawful policy.  (*See generally* Pls.' Opp'n ¶¶ 20-24.)  This argument is misplaced.  Plaintiffs must first state plausible facts giving rise to a reasonable inference of an unlawful municipal policy, as required by *Iqbal*, before they may proceed to discovery on their *Monell* claim.  Therefore, because Plaintiffs have not pled facts which plausibly make out a *Monell* claim, Orange County's and Middletown's motions to dismiss are granted as to Plaintiffs' federal claims.  However, Plaintiffs will be given one last opportunity to amend their pleadings.

E.  Plaintiffs' State Law Claims Against Orange County

Orange County also argues that Plaintiffs' failure to serve a timely notice of claim requires dismissal of Plaintiffs' state law claims.  (Orange Mem. 11-13.)  "[I]n a federal court, state notice-of-claim statutes apply to *state*-law claims."  *Hardy v. N.Y.C. Health & Hosps.*

*Corp.*, 164 F.3d 789, 793 (2d Cir. 1999); *see also Warner v. Vill. of Goshen Police Dep't*, 256 F. Supp. 2d 171, 175 (S.D.N.Y. 2003) ("The notice of claim requirements apply equally to state court claims brought as pendent claims in a federal civil rights action.").  New York law "provides that no tort action shall be prosecuted or maintained against a municipality or any of its officers, agents, or employees unless: (1) a notice of claim has been served against the [municipality]; (2) the [municipality] has refused adjustment or payment of the claim; and (3) the action is commenced within one year and ninety days after the event upon which the claim is based occurred." *Gibson v. Comm'r of Mental Health*, No. 04-CV-4350, 2006 WL 1234971, at *5 (S.D.N.Y. May 8, 2006) (citing N.Y. Gen. Mun. Law § 50-i).  Plaintiffs are required to serve the notice of claim "within ninety days after the claim arises."  N.Y. Gen. Mun. Law § 50-e(1)(a).  This notice of claim requirement is "construed strictly by New York state courts," and a "[f]ailure to comply with these requirements ordinarily requires a dismissal for failure to state a cause of action." *Hardy*, 164 F.3d at 793-94 (internal quotation marks and citation omitted). While "New York's notice of claim requirements are not applicable to section 1983 claims brought in federal court[], the requirements do apply to state law personal injury claims that are brought in federal court as related to section 1983 cases." *Gibson*, 2006 WL 1234971, at *5 (footnote omitted).

Although Dayton served the 1/1/09 Notice of Claim on Middletown and the Middletown Officers, Nieves and the Dayton children were not added as claimants, and Orange County and DSS were not named, or served, until Plaintiffs served the 5/30/09 Amended Notice of Claim on all Defendants.  (Wong-Pan Decl. Ex. A.)  The first incident at issue in this case occurred on November 19, 2008 (Am. Compl. ¶ 17); the temporary order of protection was issued by the Family Court on December 15, 2008 (Wong-Pan Decl. Ex. D); and the finding that the children

24

had been neglected was issued in an order entered on January 27, 2009, (Wong-Pan Decl. Ex. F).

Therefore, although the 1/1/09 Notice of Claim was timely served within ninety days of these

events, the events at issue all occurred more than ninety days prior to the filing of the 5/30/09

Amended Notice of Claim.  Ninety days prior to May 30, 2009 is March 1, 2009; thus, the Court

may only adjudicate state law claims against Orange County arising after that date.  The only

event that the Court is aware of that occurred after March 1, 2009 is the disposition hearing and

extension of the order of protection on March 3, 2009.  (Wong-Pan Aff. Ex. G.)  However,

neither the 5/30/09 Amended Notice of Claim nor the Amended Complaint makes any reference

to this March 3, 2009 hearing or order of protection at all, let alone alleges any coercion with

respect to this order.  Moreover, neither the 5/30/09 Amended Notice of Claim nor the Amended

Complaint contains allegations of any injuries arising from acts after March 1, 2009.

Accordingly, Orange County argues that all of the state law claims should be dismissed against

them.

Plaintiffs argue that the 5/30/09 Amended Notice of Claim was in fact timely served.

(Pls.' Opp'n ¶ 40.)  As discussed above, that is plainly not the case.  In the alternative, Plaintiffs

ask the Court for leave to serve a late notice of claim (*id.*), although Plaintiffs concede that the

time for them to move for leave to file a late notice of claim has expired, (*id.* ¶ 33).  However,

this Court does not have jurisdiction to grant leave to serve a late notice of claim, and, in any

event, such a request would be time-barred with respect to the claims of Dayton and Nieves.

New York law provides that "[u]pon application, the court, in its discretion, may extend

the time to serve a notice of claim," and lists several factors to consider in determining whether

to grant an extension.  N.Y. Gen. Mun. Law § 50-e(5).  The statute goes on to state that "[a]ll

applications under this section shall be made to the supreme court or to the county court . . . ."

*Id.* § 50-e(7).  The Second Circuit has not definitively ruled on whether a federal district court may grant a request to extend time to serve the notice of claim.  *See Corcoran v. N.Y. Power Auth.*, 202 F.3d 530, 540 (2d Cir.1999) (noting that the "appropriate state court may extend the time to file a notice of claim" under § 50-e, but declining to decide "whether the federal court has such jurisdiction" because the request for leave to file a late notice of claim was properly denied on the merits); *cf. Parise v. N.Y.C. Dep't of Sanitation*, No. 03-CV-1673, 2007 WL 2746912, at *7 (E.D.N.Y. Sept. 19, 2007) ("[T]here is an open question as to whether a federal district court, as opposed to a state supreme court or a county court, has jurisdiction to permit the amendment of a notice of claim."), *aff'd*, 306 F. App'x 695 (2d Cir. 2009).  However, district courts within this Circuit "have routinely found that they lack jurisdiction to even consider such an application."  *Humphrey v. Cnty. of Nassau*, No. 06-CV-3682, 2009 WL 875534, at *21 (E.D.N.Y. Mar. 30, 2009) ("This [c]ourt agrees with the overwhelming weight of authority among district courts in the Second Circuit and finds that Section 50-e(7) permits only certain state courts-'the supreme court or the county court' in certain counties-to consider and to grant an application for an extension of time in this context." (alteration omitted) (collecting cases)); *see also Harris v. Howard*, No. 08-CV-4837, 2010 WL 2404293, at *1 (S.D.N.Y. June 15, 2010) ("A federal judge does not have the power to authorize the filing of a late notice of claim against [a municipality]."); *Costabile v. Cnty. of Westchester*, 485 F. Supp. 2d 424, 431 (S.D.N.Y. 2007) (holding that district court "lack[ed] jurisdiction to decide plaintiffs' application to serve a late notice of claim"); *Gibson*, 2006 WL 1234971, at *5 ("Federal courts do not have jurisdiction to hear complaints from plaintiffs who have failed to comply with the notice of claim requirement, or to grant permission to file a late notice."); *Polite v. Button*, 999 F. Supp. 705, 708 (N.D.N.Y. 1998) (concluding that district court lacked "jurisdiction to entertain plaintiff's motion for leave

to file a late notice of claim," because "[s]uch applications must be made to the supreme or county court"); *Brown v. Metro. Transp. Auth.*, 717 F. Supp. 257, 260 (S.D.N.Y. 1989) ("Until the state legislature amends § 50-e(7) to include federal trial courts, [the court has] no choice but to dismiss for lack of jurisdiction plaintiff's application to file a late notice of claim or to have his notice of claim deemed timely filed.").  Accordingly, this Court lacks jurisdiction, pursuant to § 50-e(7), to deem Plaintiffs' 5/30/09 Amended Notice of Claim for their state law claims against Orange County timely filed, or to grant an extension of time to file a late notice of claim.

However, in this case, any such application to the state court would be untimely with respect to the claims of Dayton and Nieves.  Although a state supreme or county court does have jurisdiction to grant an extension of time to serve a notice of claim, "[t]he extension shall not exceed the time limited for the commencement of an action by the claimant," N.Y. Gen. Mun. Law § 50-e(5), which, in the present case, was "within one year and ninety days after the happening of the event upon which the claim is based," *id.* § 50-i(1); *see also Simon v. City of New York*, No. 09-CV-1302, 2011 WL 317975, at *16 (E.D.N.Y. Jan. 3, 2011) ("In no event, however, may any court permit a plaintiff to file a late Notice of Claim after the expiration of the statute of limitations, i.e., more than one year and ninety days after the accrual of the action."), *adopted by* 2011 WL 344757 (E.D.N.Y. Feb. 1, 2011); *Pierson v. City of New York*, 439 N.E.2d 331, 332 (N.Y. 1982) ("[T]he application for the extension may be made before or after the commencement of the action but not more than one year and 90 days after the cause of action accrued.").  Therefore, the time in which Plaintiffs could have sought leave to file a late notice of claim has long since expired.

Moreover, Plaintiffs' 5/30/09 Amended Notice of Claim cannot be treated as an application to file a late notice of claim.  New York law makes clear that a plaintiff seeking to

27

file a late notice of claim must apply for leave to do so from a court. Therefore, Plaintiffs'
service of their 5/30/09 Amended Notice of Claim, without permission to do so, is treated as a
nullity. *See Laroc v. City of New York*, 847 N.Y.S.2d 677, 678 (App. Div. 2007) ("Although the
law permits late service of a notice of claim by leave of court under some circumstances, the
plaintiffs were required to move for leave to serve a late notice of claim pursuant to [] § 50-
e(5)," and accordingly, the plaintiffs' "late service of a notice of claim without leave of court
was a nullity."). In a New York case presenting a similar situation, the plaintiff served a timely
notice of claim against one municipal defendant, but served another public defendant nineteen
days after the ninety-day limit without seeking court approval for the late service. *See Hall v.
City of New York*, 768 N.Y.S.2d 2, 4 (App. Div. 2003). After the statute of limitations expired,
the plaintiff filed an application to have his previously served notice of claim deemed timely
served nunc pro tunc, but the court denied the request, noting that it "lacked the discretion to
excuse plaintiff['s] late service of [his] notice of claim since [his] motion for such relief was not
made until after the Statute of Limitations had run, and it makes no difference that the plaintiff[],
without court leave, had served the notice of claim within the limitations period." *Id.* (alterations
and internal quotation marks omitted). Accordingly, all of the state law claims currently asserted
by Dayton and Nieves against Orange County are dismissed without prejudice. To the extent
Dayton and Nieves wish to assert state law claims against Orange County for injuries arising
after March 1, 2009 – and that would be encompassed by the 5/30/09 Amended Notice of Claim
– they may amend their pleadings to do so.[10]

---

[10] However, the Court notes that even if Plaintiffs amend their pleadings to allege injuries
arising from the March 3, 2009 dispositional hearing or Order of Protection, Plaintiffs still may
encounter difficulties because the 5/30/09 Amended Notice of Claim does not mention the
March hearing or order. Thus, to have claims arising from any such injuries considered,
Plaintiffs would have to argue that § 50-e(6) applies, which provides that "[a]t any time after the

However, the claims asserted by Nieves on behalf of the five children are different because of their infancy.  Under New York law, the statute of limitations is tolled on claims accruing during a person's infancy.  *See* N.Y. C.P.L.R. § 208 ("If a person entitled to commence an action is under a disability because of infancy or insanity at the time the cause of action accrues, and the time otherwise limited for commencing the action . . . is less than three years, the time shall be extended by the period of disability."); *see also Paige v. Police Dep't of Schenectady*, 264 F.3d 197, 199 n.1 (2d Cir. 2001) ("Statutes of limitations are tolled during

---

service of a notice of claim and at any stage of an action . . . a mistake, omission, irregularity or defect made in good faith in the notice of claim . . . , not pertaining to the manner or time of service thereof, may be corrected, supplied or disregarded, as the case may be, in the discretion of the court, provided it shall appear that the other party was not prejudiced thereby."  N.Y. Gen. Mun. Law § 50-e(6).  Therefore, Plaintiffs will have to show that their failure to include claims arising from the March 3, 2009 hearing and order (or any other injuries arising after March 1, 2009), was a mistake or omission that was made in good faith, and that it did not prejudice Orange County.

It is unclear whether, in light of the language in § 50-e(7) that "[a]ll applications under this section shall be made to the supreme court or to the county court," a federal district court has jurisdiction to correct, supplement, or disregard any mistakes, omissions, or defects in the notice of claim.  The Court need not decide at this point whether it has such jurisdiction.  However, one court in this district concluded that it did have jurisdiction, stating that "the use of the term 'disregard' [in §50-e(6)] plainly contemplates that the court in which the lawsuit is pending would be the one to make [the] decision" to disregard the mistakes and that it "doubt[ed] that the legislators contemplated that a federal court hearing a state-law claim could not make the decision whether to disregard an error in a notice of claim even though, had the lawsuit been filed in state court, the trial judge could do so," though not disagreeing that applications for leave to file an untimely notice of claim must be made in state court.  *Zhao v. City of New York*, 656 F. Supp. 2d 375, 404 n.25 (S.D.N.Y. 2009).  Other courts have applied § 50-e(6) without addressing the jurisdictional point.  *See Perez v. City of New York*, No. 07-CV-10319, 2009 WL 1616374, at *12 (S.D.N.Y. June 8, 2009) (disregarding a defect in the notice of claim pursuant to § 50-e(6) where there was no bad faith or prejudice); *Hill v. City of New York*, No. 03-CV-1283, 2005 WL 3591719, at *11 (E.D.N.Y. Dec. 30, 2005) (same); *Taunus Corp. v. City of New York*, 279 F. Supp. 2d 305, 309 (S.D.N.Y. 2003) (concluding that an omission in the notice of claim could not be excused under § 50-e(6)).

In addition, to the extent Plaintiffs seek to allege injuries arising from the March 3, 2009 Family Court hearing or Order of Protection, they will also need to show that such claims are not barred by *Rooker-Feldman*.

infancy under New York state law.").[11]  The highest New York court "has consistently treated the year-and-90-day provision contained in section 50-i as a statute of limitations."  *Campbell v. City of New York*, 825 N.E.2d 121, 122 (N.Y. 2005); *see also Cohen v. Pearl River Union Free Sch. Dist.*, 414 N.E.2d 639, 640-41 (N.Y. 1980) (noting that § 50-i "has generally been regarded as a Statute of Limitations subject to the tolls for infancy and insanity provided in CPLR 208"). As such, the period of time during which a court may authorize service of a late notice of claim is also subject to the tolling provisions of § 208.  *See Cohen*, 414 N.E.2d at 641.

Yet, the tolling of the time limitation for commencing the Dayton children's action due to their infancy "does not relieve [the children] from filing a Notice of Claim within ninety days of the accrual of the action."  *Simon*, 2011 WL 317975, at *19.  Thus, the 5/30/09 Amended Notice of Claim naming the children as claimants was still untimely, and the children must apply for leave to serve a late notice of claim, which a state court has discretion to grant, if it chooses to do so, because the statue of limitations has not yet run on the infant children's claims.  *See Vasquez v. City of Newburgh*, 826 N.Y.S.2d 648, 650 (App. Div. 2006) ("While it is the general rule that an application pursuant to General Municipal Law § 50-e(5) for leave to serve a late notice of claim must be brought within the one year and 90-day period provided in General Municipal Law § 50-i, that time period is subject to a toll of up to 10 years due to infancy."); *Russo v.*

---

[11] This action is not brought by the children themselves; instead, it is brought by Nieves on the children's behalf, and some courts have held that in that situation, § 208 can apply, presumably because the claims are in reality those of the infants even though brought by a parent or guardian on their behalf.  *See, e.g.*, *Kulpa ex rel. Kulpa v. Glass*, 903 F. Supp. 321, 322-23 (N.D.N.Y. 1995) (holding that § 208 applied to mother's § 1983 claim against state Department of Social Services brought on behalf of children even though mother had standing to assert the claims herself as children's guardian); *see also Finch ex rel. Moe v. City of New York*, No. 04-CV-4434, 2006 WL 1458314, at *2 (S.D.N.Y. May 26, 2006) ("Thus, to the extent Plaintiff is bringing her claims on behalf of the infant, the statute of limitations is tolled until he is eighteen years old.").

*Monroe-Woodbury Cent. Sch. Dist.*, 723 N.Y.S.2d 198, 199 (App. Div. 2001) ("When an infant claimant is involved, the Supreme Court has the discretion to consider whether to afford the infant the tolling effect of CPLR 208 to permit late service of a notice of claim during the period of infancy."); *cf. Rendell S. v. N. Junior High Sch.*, 784 N.Y.S.2d 623, 624-25 (App. Div. 2004) ("Although infancy automatically tolls the statutory period for commencing an action against a municipality, the infancy of an injured claimant does not, by itself, compel the granting of a petition for leave to serve a late notice of claim." (citations omitted)); *Flores v. Cnty. of Nassau*, 777 N.Y.S.2d 739, 740 (App. Div. 2004) ("While infancy will automatically toll the one year and 90-day statute of limitations for commencing an action against a municipality, the infancy of an injured petitioner, standing alone, does not compel the granting of an application for leave to serve a late notice of claim." (citations omitted)).

As previously discussed, this Court does not have jurisdiction to grant permission to serve a late notice of claim; that application may only be granted by a supreme or county court under § 50-e(7).  Accordingly, the state law claims asserted by the Dayton children are dismissed as to Orange County without prejudice.[12]

---

[12] Plaintiffs also contend that "[a]rguably, the statute for filing a Notice of Claim on Michael Dayton's behalf is tolled for his illiteracy and mental condition of bipolar," without providing any legal support for that assertion.  (Pls.' Opp'n ¶ 37.)  This argument is without merit for several reasons.  First, as already explained, the disability of the claimant does not toll the time to file a timely notice; instead, it tolls the deadline to seek leave to file a late notice of claim, because under § 50-e(5), that period is commensurate with the limitations period applicable to the underlying cause of action.  Second, although incapacity of the claimant is a factor a court may consider in granting leave to file a late notice of claim under § 50-e(5), the conditions that allow for tolling of the statute of limitations under § 208 are infancy and insanity.  Even assuming that Plaintiffs have pled that Dayton suffers from an incapacity within the meaning of § 50-e(5) – which is far from clear – they have at no time alleged that he suffers from insanity.  Accordingly, a court is unable to exercise discretion to allow service of a late notice of claim, because the statute of limitations for commencing the action has expired, and there is no basis upon which to toll it.

In addition, in their reply submitted in support of their motion to dismiss, Middletown

31

F.  Claims Against the Middletown Officers

The Middletown Officers argue that the claims against them should be dismissed on summary judgment because Plaintiffs' allegations are so contradictory that no reasonable person could believe Plaintiffs' testimony.  (Middletown Mem. 7-8 (citing *Jeffreys v. City of New York*, 426 F.3d 549, 553-55 (2d Cir. 2005); *Slacks v. Gray*, No. 07-CV-510, 2009 WL 3164782, at *13 (N.D.N.Y. Sept. 29, 2009); *Shabazz v. Pico*, 994 F. Supp. 460, 468-71 (S.D.N.Y. 1998)).)

The Middletown Officers point to two inconsistencies in Plaintiffs' factual allegations. First, the Middletown Officers assert that the allegations in the Amended Complaint regarding Dayton's supposed unlawful detention, interrogation, and prosecution are "demonstrably (and admittedly) false." (Middletown Mem. 10.)  According to the Middletown Officers, these allegations appeared for the first time in Plaintiffs' 5/30/09 Amended Notice of Claim and initial Complaint, and that when the "patently false" nature of these claims "was brought to the Court's attention, Dayton's attorneys had no choice but to file an Amended Complaint in which these false claims were recanted"; however, the Middletown Officers maintain that some of these allegations are still contained in the Amended Complaint.  (Middletown Mem. 9-10.)  Second, the Middletown Officers argue that although the Amended Complaint alleges that the Middletown Officers' actions caused Dayton "permanent injuries" and exacerbated injuries that

---

and the Middletown Officers first assert that Plaintiffs did not serve a timely notice of claim. Generally, the Court "will not consider an argument raised for the first time in a reply brief." *United States v. Yousef*, 327 F.3d 56, 115 (2d Cir. 2003).  The Court also notes that Plaintiffs clearly served the timely 1/1/09 Notice of Claim on these Defendants with respect to the claims asserted by Dayton.  Plaintiffs added the claims of Nieves and the children in the 5/30/09 Amended Notice of Claim.  The claims of the Dayton children are subject to the same analysis as discussed above as to Orange County.  With respect to Nieves' claims, Middletown and the Middletown Officers have not waived their defense of untimely service of the 5/30/09 Amended Notice of Claim, and may raise these arguments at summary judgment.

Dayton had previously sustained in a motor vehicle accident (Am. Compl. ¶ 22), at a deposition conducted by Middletown pursuant to N.Y. Gen. Mun. Law § 50-h on March 26, 2009, Dayton testified that he could not identify specifically what injury the Middletown police caused him (Isseks Decl. Ex. B, at 45), and Dayton's medical records from after the incident do not directly identify any injury inflicted by the police, (Isseks Decl. Ex. G).  (Middletown Mem. 10-11.)

The Middletown Officers also offer two third-party affidavits that they believe impeach Plaintiffs' credibility: (1) a statement indicating that Dayton and Nieves offered ten thousand dollars to a potential witness to testify against Middletown and the Middletown Police Department (Isseks Decl. Ex. I); and (2) a statement demonstrating that Dayton was previously acquainted with Pearson, despite his claims to the contrary, (*id.* Ex. J).  (Middletown Mem. 6-7.)

The Officers cite *Jeffreys* and *Shabazz* for the proposition that the Court should dismiss the Amended Complaint on summary judgment because the allegations in the Amended Complaint are "so contradictory that doubt is cast upon their plausibility."  *Shabazz*, 994 F. Supp. at 470.  In *Jeffreys*, the plaintiff alleged police brutality after being arrested for burglary. *See Jeffreys*, 426 F.3d at 551-53.  The court converted the defendant's motion to dismiss into a motion for summary judgment because the complaint was so replete with inconsistencies that "no reasonable juror would undertake the suspension of disbelief necessary to credit the allegations made in [the plaintiff's] complaint."  *Id.* at 551.  The court reached its conclusion by examining documentary evidence, including the plaintiff's own statements and contemporaneously prepared medical records, which conclusively established that the plaintiff's claims could not succeed at trial.  Similarly, in *Shabazz*, the court granted summary judgment where the plaintiff's claims of prison abuse were plainly discredited by his own testimony and contemporaneously prepared medical affidavits.  *Shabazz*, 994 F. Supp. at 470-71.

Here, the inconsistencies identified by Defendants are insufficient to warrant dismissal on summary judgment.  Unlike the plaintiffs in *Jeffreys* and *Shabazz*, Dayton has consistently alleged that the Middletown Officers exacerbated his previous injuries.  Additionally, consideration of the third-party affidavits submitted in support of the Middletown Officers' motion would require the court to impermissibly assess witness credibility.  *See Rule v. Brine, Inc.,* 85 F.3d 1002, 1011 (2d Cir. 1996) ("Assessments of credibility and choices between conflicting versions of the events are matters for the jury, not for the court on summary judgment.").  Finally, the factual inconsistencies between the Amended Complaint and the other prior statements do not approach the level of inconsistency seen in either *Jeffreys* or *Shabazz*.  The Parties here have not yet had an opportunity to conduct discovery.  Any factual inconsistencies in Plaintiffs' allegations, including those identified here by the Middletown Officers, can properly be resolved after both sides have had an opportunity to fully investigate the underlying facts of the case.  *See Indergit v. Rite Aid Corp.*, No. 08-CV-9361, 2010 WL 1327242, at *3 (S.D.N.Y. Mar. 31, 2010) ("The Second Circuit has held that summary judgment should only be granted if after discovery, the nonmoving party has failed to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof," and thus "[s]ummary judgment is strongly disfavored prior to the parties having had an adequate opportunity for discovery." (alterations and internal quotation marks omitted)); *Fowler*, 677 F. Supp. 2d at 677 n.1 (denying motion for summary judgment without prejudice, and with leave to renew the motion after relevant discovery had been completed, where the plaintiff had "not had the opportunity to conduct discovery that could uncover evidence to support her allegations").[13]

---

[13] Although insufficient to require dismissal on summary judgment, the factual allegations in the Amended Notice of Claim and Amended Complaint are troublingly incongruous with the facts asserted in Plaintiffs' original Notice of Claim and representations

Accordingly, the Middletown Officers' motion for summary judgment is denied without prejudice.

### III.  Conclusion

For the foregoing reasons, the Middletown Officers' motion for summary judgment is denied without prejudice.  The motion to dismiss DSS is granted with prejudice.  Middletown's and Orange County's motions to dismiss Plaintiffs' federal § 1983 claims under *Monell* are granted without prejudice, as is the motion to dismiss Plaintiffs' state law claims against Orange County.  Defendants' motions to dismiss claims arising from the Family Court finding of neglect and order of protection under *Rooker-Feldman* are granted with prejudice, but denied as to Plaintiffs' other allegations regarding Orange County's conduct during the Family Court proceedings.  Plaintiffs have thirty days from the date of this Opinion and Order to file a Second Amended Complaint consistent with this Opinion and Order.  The Clerk of Court is respectfully directed to terminate the pending motions.  (Dkt. Nos. 14 and 18.)

SO ORDERED.

DATED:    White Plains, New York
                 March **3)**  , 2011

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE

---

made to the Court.  The Court reminds Plaintiffs' counsel to remain vigilant of their Rule 11 obligations when preparing the Second Amended Complaint.

Service List (via ECF)

Stuart R. Shaw, Esq.
Law Offices of Stuart R. Shaw
240 Madison Avenue, 7th Floor
New York, NY 10016
(212) 661-6750
Email: shawnesq@gmail.com
*Counsel for Plaintiffs*

Robert N. Isseks, Esq. (Of Counsel)
Alex J. Smith, Esq.
Corporation Counsel of the City of Middletown
6 North Street
Middletown, NY 10940
(845) 344-4322
Fax: (845) 341-1760
Email: isseks@frontiernet.net
Email: asmith22@hvc.rr.com
*Counsel for Defendants City of Middletown and City of Middletown Police Department Officers
John Doe "1" through "5"*

Laura Wong-Pan, Esq.
Office of the Orange County Attorney
Law Dept., 255 Main Street
Goshen, NY 10924
(845) 291-3150
Fax: (845) 291-3167
Email: lwongpan@co.orange.ny.us
*Counsel for Defendants Orange County and Orange County Department of Social Services*